BURKE, Judge.
Patrick Sims appeals the revocation of his probation. It appears that, in 2001, Sims was convicted of first-degree robbery and was sentenced to 20 years in prison. That sentence was split, and Sims was ordered to serve five years in prison followed by probation. While on probation, Sims was arrested for breaking and entering a motor vehicle. It further appears that a probation delinquency report was filed based on that arrest and based on Sims’s changing his residence without the consent of his probation officer; however, a copy of the delinquency report is not contained in the record.

Facts and Procedural History

A probation-revocation hearing was held on October 29, 2014. Sims represented himself at the hearing.
The only witness presented by the State at the hearing was Christopher Grear, a police officer for the Anniston Police Department. Officer Grear testified that he investigated the complaint of the breaking and entering of a motor vehicle that occurred in the parking lot of a Dollar General discount store in May 2014. Officer Grear reviewed surveillance video from the Dollar General store. On that video, Officer Grear observed a black male wearing a dark work uniform park his white Chevrolet Lumina automobile next to the victim’s vehicle, enter the Dollar General store, return to his vehicle, reach through the window of the victim’s vehicle, pull a purse out of the victim’s vehicle, and then leave in his vehicle. Officer Grear also observed that the Lumina was missing some paint. On June 17, 2014, Officer Grear happened to see the Lumina he had seen in the surveillance video. Officer Grear ran the Lumina’s license-plate number and discovered that the vehicle belonged to Sims. At that time, Officer Grear spoke with Sims, who happened to be wearing the same work uniform that Officer Grear had seen the suspect wearing in the video. Officer Grear identified Sims as the person he saw in the video taking the purse from the victim’s vehicle.
Sims called Sheronica McGuire, his probation officer, to testify at the hearing. On cross-examination, McGuire testified:
“On June 26th I spoke with Detective Wade and he told me that he was, in fact, looking or attempting to locate Mr. Sims. He stated that Mr. Sims’ stepmother told him that he—Mr. Sims no longer lived at the address he provided the probation office, which was on 20 Queens Drive, but instead he stayed in Alexandria.”
(R. 34.)
Laconya Bowers, Sims’s stepmother, testified that some officers visited her house and asked her whether Sims lived in the house. Bowers responded: “[Y]es, he lives here but he’s not here now, he’s at work.” (R. 36.)
At the conclusion of the revocation hearing, the circuit court did not make any oral findings. On November 4, 2014, the circuit court issued the following written or: der:
“Revocation hearing was held October 29, 2014. Defendant present pro se. State represented by Chief Assistant District Attorney Lynn Hammond.
*388 “Upon consideration of the evidence presented by the State, the Court finds [Patrick Sims] to be in violation of the following probation condition(s) and the Court is reasonably satisfied from the evidence that a violation of the conditions or regulations of probation occurred:
“1. Charged with new offense— Breaking and Entering a Motor Vehicle
“2. Change of residence without the consent of the Probation Officer
“The Court hereby REVOKES [Sims’s] probation based on the finding that [Sims], while on probation, violated the above probation condition(s) and sentences the probationer to:
“Serve his remaining sentence with a total of 104 days jail credit as of November 4, 2014 (credit to be given by [the Department of Corrections] for the 2 splits previously served).”
(C. 6.)
After his probation was revoked, Sims filed a “motion for reconsideration of probation revocation.” (C. 7.) In that motion, Sims argued that the circuit court’s revocation order was inadequate, that the circuit court’s finding that he had been charged with a new offense was an insufficient basis on which to revoke his probation, that the evidence was insufficient to support the revocation of his probation, and that the circuit court failed to advise of him of his right to counsel. The circuit court denied Sims’s motion.

Discussion

I.
On appeal, Sims argues, among other things, that the grounds for revoking his probation were insufficient. According to Sims, the circuit court’s finding that he changed his residence without the consent of his probation officer was improper because it was based entirely on hearsay evidence. Further, Sims argues that the circuit court’s other basis for the revocation of his probation—that he had been “charged with [a] new offense”—was improper because merely being charged with a new offense is an insufficient ground for probation revocation.
A.
“‘Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala. R. Evid. “ ‘[I]t is well settled that hearsay evidence may not form the sole basis for revoking an individual’s probation.’ ” Sams v. State, 48 So.3d 665, 668 (Ala.2010) (quoting Goodgain v. State, 755 So.2d 591, 592 (Ala.Crim.App.1999)). This rule arises from due-process considerations and from a concern that “‘[t]he use of hearsay as the sole means of proving a violation of a condition of probation denies a probationer the right to confront and to cross-examine the persons originating the information that forms the basis of the revocation.’ ” Id.
In the present case, the only evidence that Sims changed his residence without the consent of his probation officer was the following testimony of his probation officer:
“I spoke with Detective Wade and he told me that he was, in fact, looking or attempting to locate Mr. Sims. He stated that Mr. Sims’ stepmother told him that he—Mr. Sims no longer lived at the address he provided the probation office, which was on 20 Queens Drive, but instead he stayed in Alexandria.”
(R. 34.)
Clearly, the probation officer’s testimony regarding Detective Wade’s ouh-of-court statements about Sims changing his residence was hearsay. Because that testimony was the only evidence indicating *389 that Sims had changed his residence, hearsay formed the sole basis for the circuit court’s finding that Sims changed his residence without the consent of his probation officer. Therefore, the revocation of Sims’s probation on that ground was not based on sufficient evidence and was improper.
B.
Next, concerning whether merely being charged with a new offense is a sufficient ground for probation revocation, this Court has stated:
“ “While it is not necessary that a probationer be convicted of the charged offense before his probation is revoked, it is nevertheless true that the filing of charges or an arrest, standing alone, is insufficient ground for probation revocation.’ Mitchell v. State, 462 So.2d 740, 742 (Ala.Crim.App.1984).
“ ‘If merely being arrested is sufficient for revocation of probation, then revocation would lie within the discretion of police officers rather than with judicial officers. In such a case, judges would only perform the ministerial duty of determining if an arrest had been made and then signing the revocation order. The decision to revoke probation is a judicial function and should be based upon the appellant’s conduct and not upon an accusation only. The State must submit enough substantive evidence to reasonably satisfy the trier of the facts that a condition of probation was breached.’
“Hill v. State, 350 So.2d 716, 718 (Ala.Crim.App.1977).”
Calhoun v. State, 854 So.2d 1209, 1210 (Ala.Crim.App.2002).
In the present case, there is simply no oral or written finding by the circuit court that the court was reasonably satisfied that Sims was guilty of the new offense, and merely being charged with a new offense is an insufficient ground for probation revocation. Sims pointed out this fact in his “motion for reconsideration of probation revocation,” but the circuit court summarily denied that motion and chose not to change its order or to make additional findings. Nevertheless, immediately before the probation revocation hearing began, the circuit court correctly stated: “I don’t have to have a trial on the offense itself. I just need to be reasonably satisfied that one occurred.” (R. 15.) Thus, it is unclear from the record whether the circuit court believed that the fact that Sims had been arrested for a new offense was a sufficient ground for revoking Sims’s probation. In any event, merely being arrested or charged with a new offense is not a sufficient ground for probation revocation. Therefore, because the circuit court did not state any proper ground for revoking Sims’s probation, this case must be remanded for the circuit court to set aside its revocation order.
II.
Moreover, Sims argues that he was not advised of his right to be represented by counsel under Rule 27, Ala. R.Crim. P. Rule 27.5(a)(3), Ala. R.Crim. P., provides that, at the probationer’s initial appearance after his or her arrest, the judge shall “[ajdvise the probationer of his or her right to request counsel and appoint counsel to represent an indigent probationer if the requirements of Rule 27.6(b) are met.” Rule 27.6(b), Ala. R. Crim P., provides:
“The probationer is entitled to be present at the [probation revocation] hearing and to be represented by counsel. Counsel will be appointed to represent an indigent probationer upon request:
“(1) If the probationer makes a color-able claim that the probationer has not *390 committed the alleged violation of the conditions or regulations of probation or the instructions issued by the probation officer; or
“(2) Even when the violation is a matter of public record or is uncontested, if there are substantial reasons that justify or mitigate the violation and that may make revocation inappropriate, and the reasons are complex or otherwise difficult to develop or present.”
In the present situation, at Sims’s initial appearance, he stated that he had read his probation delinquency report, that he understood the report, and that he wanted a hearing. The circuit court then set the hearing for October 1, 2014. Nothing in the record indicates that the circuit court advised Sims of his right to counsel. However, after the circuit court set the hearing date, the following discussion occurred:
“[Sims]: All right. Can I ask a question? How do I go about subpoenas?
“The Court: All these questions—y’all haven’t caught on. These questions don’t get a lot of good answers from me, do they? Y’all caught on yet? But you can ask.
“[Sims]: I want to know how do I subpoena "witnesses.
“The Court: Pour years of college, three years of law school. That will get you a good start.
“(Brief break.)
“The Court: If you want a subpoena issued, if you can’t figure out how to do it, you’re going to have to get somebody to do it for you. Pour years of college and three years of law school, that may not be enough, but somebody can figure out how to get you a subpoena probably if you don’t have a lawyer.
“[Sims]: I have another question. I retained a lawyer, Mr. Doug Ghee.
“The Court: He knows how to issue a subpoena.
“[Sims]: Yeah, but I’m not sure if he’s going to represent me at the revocation hearing or not.
“The Court: Okay. Well, best be finding out.
“(END OF PROCEEDINGS)”
(R. 3^4.)
On October 1, 2014, Sims appeared before the circuit court with counsel, and the circuit court simply reset the hearing to October 29, 2014. (R. 8-9.) There was no discussion concerning Sims’s right to counsel.
On October 29, 2014, immediately before the revocation hearing began, an attorney appeared with Sims, but the following occurred:
“The Court: Patrick Sims. You’re Patrick Sims; is that correct?
“[Sims]: Yes, sir.
“The Court: You appear with the Honorable Doug Ghee who’s been appointed?
“Mr. Ghee: No, sir.
“The Court: Retained?
“Mr. Ghee: Retained in another matter, but I’m here with him on this matter.
“The Court: The state is represented by the Honorable Lynn Hammond. You’ve seen your report; is that correct?
“[Sims]: Yes, sir.
“The Court: Any additions or corrections to the report?
“[Sims]: Yes, Your Honor.
“The Court: What are they?
“Mr. Ghee: Judge, like I say, I represent him in another matter, and I just saw he was on the docket and I stood up here with him. I’ve not seen his report. Can we have a few minutes to look at it? May I have a few?
*391 “The Court: Do you have an extra report?
“Mr. Ghee: I’ll look at his copy. Judge. I’ll look at his copy if you’ll call us back.
“The Court: Okay.
“Mr. Ghee: Thank you.
“The Court: All right.
“(Brief break.)
“The Court: Patrick Sims. Did /all talk any? Do y’all need a hearing?
“Mr. Ghee: Judge, we talked. May we approach?
“The Court: Sure. Did you talk to the State about this?
“Mr. Ghee: No, sir. I’ve talked to the probation officer, Judge, but—technically I don’t represent Mr. Sims on this case, Your Honor. I represent him on the case that’s the new charge that he does have that’s pending that he has had a preliminary hearing on and professes his innocence on. He and I have a disagreement about how to proceed today. I’m here with him on it because I do represent him on the other case. He would like to ask the Court for time to seek legal counsel on this particular case and come back before you, and I think he wants to address the Court if you will allow.
“The Court: I think—didn’t we already—we had a hearing set for October already once, didn’t we? I think I said something about getting a video, about getting a police officer. Have you got the police officer present?
“Ms. Hammond: I do.
“Mr. Ghee: There is a video, Your Honor, and I have requested—I have seen it myself. And I’ve also requested a copy of it from Randy to give Mr. Sims.
“The Court: Yeah. I mean, I don’t have to have a trial on the offense itself. I just need to be reasonably satisfied that one occurred.
“Mr. Ghee: Yes, sir.
“The Court: This police officer is going to be able to identify this man?
“Ms. Hammond: Yes, sir.
“Mr. Ghee: You have a good memory, Your Honor, and that is true. The video did come up.
“The Court: That’s what I was concerned about last time, so I gave him some leeway. And here we are again today.
“Mr. Ghee: I’ve seen the video and I’ve related to him what was in the video.
“The Court: I’m going to go on. It’s been a month. You ready to go forward?
“Ms. Hammond: Yes, Your Honor.
“The Court: Call your first witness.
“Ms, Hammond: State calls Officer Leach.
“The Court: Sure.
“Ms. Hammond: Sorry. Officer Grear. I got mixed up on my officers.
“Mr. Ghee: Judge, he does not wish for me to be here with him.
“The Court: Sure, I understand.”
(R. 13-16.)
Although it appears that Sims might have known that he had a right to counsel, he was never advised of his right to counsel, and he ultimately was not represented by counsel at the revocation hearing. It appears that, on the day of the hearing, Sims wanted to ask the circuit court for time to seek legal counsel, but, without discussing Sims’s right to counsel, the circuit court proceeded with the hearing. The record does not clearly indicate that Sims understood his right to counsel and that he voluntarily relinquished that right. On remand, the circuit court must fully *392 advise Sims of his right to counsel, and the court can determine whether Sims is entitled to counsel under Rule 27.6(b), Ala. R. Crim P.

Conclusion

If, after Sims is fully advised of his right to counsel, the circuit court determines that counsel is not required, the court must set forth its findings in the record. If, after the revocation hearing, the circuit court determines that Sims’s probation should be revoked, the court must set forth in the record the evidence and the proper grounds for the revocation. ,
Based on the foregoing, the case is remanded for the circuit court to set aside its revocation order and to conduct a new hearing. On remand, the circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 42 days after the release of this opinion.
REMANDED WITH INSTRUCTIONS.*
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.

 Note from the reporter of decisions: On October 15, 2015, on return to remand, the Court of Criminal Appeals dismissed the appeal, without opinion.